# Nissley *versus* Heisey's Executor.
# Heisey's Executor *versus* Nissley.

1. Nissley died intestate in 1834, leaving a widow and children; an inquisition in partition valuing, &c., his real estate, was confirmed November 5th 1838; a daughter, one of his heirs, was married November 29th. Two of his sons, March 1839, accepted the land at the valuation, subject to the widow's interest, payable to his heirs at her death. The daughter died in 1862, leaving a husband, and having made a will disposing of her interest in her father's real estate accruing after the death of the widow, who died in March 1872. In December 1872 the husband of the daughter notified her executors that he claimed the whole of his wife's share in her mother's dower, refused to recognise her will, and claimed all his rights to her real estate to which by law he was entitled. The court below decided that the daughter's interest was her separate property and would pass by her will, subject to her husband's rights under the Act of May 4th 1855; and that the husband gave sufficient notice of his election. This was affirmed by the Supreme Court.

2. When the wife's interest in her father's real estate was converted by the proceedings in partition, it could not go to the husband without her consent, &c., under the Act of March 29th 1832, which not having been obtained the money never vested in the husband.

May 4th 1875. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Writs of error to the Court of Common of Pleas of *Lancaster county*: Of May Term 1875, Nos. 47, 49.

This was an action to the April Term 1873, of the court below, by David M. Eyer, executor, &c., of Daniel K. Heisey, deceased, against Joseph W. Nissley and Martin Nissley. On the 12th of September 1874 a case stated was filed, showing the following facts.

Martin Nissley died intestate March 9th 1834, leaving a widow, Anna Nissley and six children, of whom Barbara Nissley was one. Under proceedings in partition in the Orphans' Court, the real estate of Martin Nissley was divided into two parts, and valued; the inquisition was confirmed November 5th 1838. On the 29th of November 1838, Barbara Nissley, a daughter of decedent, was married to Daniel K. Heisey, the plaintiff's testator.

On the 18th of March 1839, one of the purparts, valued at $13,631, was taken by Joseph W. Nissley at the appraisement; and the other, valued at $10,561.25, was taken by Martin Nissley at the appraisement; each purpart was taken charged with one-third of its valuation during the life of the widow, payable to the heirs and legal representatives of the decedent at her death. Barbara Heisey died September 12th 1862, without issue, having made a will, which was proved February 23d 1864; from the decree of probate there was no appeal. By her will she gave her brothers and sisters her share of the money charged upon her father's real estate, and payable at the death of her mother, and appointed

[Nissley v. Heisey.]

the defendants her executors; letters testamentary were issued to them. Anna, the widow of Martin Nissley, the decedent, died in March 1872.

On the 21st of December 1872, Heisey, the surviving husband, notified the defendants, as executors, &c., of Barbara Heisey, and as owners of the land, that he claimed the whole of his wife's share in the widow's dower, and "that he refused in any way to recognise the will of Barbara Heisey, and claimed all his rights in and to her estate to which he was by law entitled."

The amount charged on the real estate during the life of the widow of Martin Nissley was $8064.08; the one-sixth to which Barbara Heisey was entitled was $1346.91.

" The question for the court to determine, under the above state of facts, without regard to the form of action, is whether the plaintiff's testator, Daniel K. Nissley, was entitled to the above sum in dispute or any part thereof. If the court should be of the opinion that the plaintiff is entitled to the whole of said money, they will render judgment in his favor against Joseph W. Nissley and Martin Nissley, the defendants, for the sum of $1346.01, with interest from the 1st day of April A. D. 1872, and costs. If of the opinion that plaintiff is entitled to only the one-half, they will render judgment against the defendant for the sum of $673, with interest from the 1st of April A. D. 1872, and costs. If of the opinion that the plaintiff is entitled to any other sum, they will render judgment in his favor for such sum as the plaintiff is entitled to, with costs. And if of the opinion that the plaintiff is not entitled to any portion of said money they will render judgment for the defendants, with costs."

Livingston, P. J., delivering the opinion of the court, said : * * *

" The real estate, out of which this fund arises, at the death of Martin Nissley, on March 19th 1834, vested as real estate, in all his children, among whom was his daughter Barbara, who afterwards became the wife of Daniel K. Heisey, and was so held by them until after her marriage. After she married, by reason of its acceptance by Joseph W. Nissley and Martin Nissley, and of their entering into a recognisance, with security approved by the Orphans' Court of Lancaster county, for the payment to the other heirs of their respective portions of the valuations of the money, the title to said real estate became wholly vested in them, and the title of the other heirs thereto wholly divested. One-third of the valuation money was charged on each purpart during the life of the widow of Martin Nissley, deceased, and not payable to the heirs until after her decease. That these thirds, this money now in dispute, after the acceptance of the property and its being made a charge thereupon by the court, was personal property, is not disputed. It was a portion of her share, of her intestate father's estate, secured by a recognisance in the Orphans' Court. At the

[Nissley *v.* Heisey.]

time this money vested in Mrs. Heisey, the 48th sect. of Act of the 29th of March 1832, had been enacted and was in force. * * * This may be termed the first act securing the rights of married women in Pennsylvania, and under it the Supreme Court held that the declaration and separate examination of a married woman, required by this act, to entitle her husband to the share of her intestate father's estate, secured by recognisance in the Orphans' Court, must be filed during the lifetime of the wife, otherwise at her death it will go to her heirs at law. No such certificate having ever been procured or filed, this continued to be the property of the wife, and never was reduced to the possession of the husband. As her property she might have disposed of it by will under the Act of 1833, with the assent of her husband, but not otherwise. It continued to be her property therefore at the time of the passage of the Act of April 11th 1848, securing the rights of married women ; and sect. 7th of this act declares 'that any married woman may dispose by her last will and testament, of her separate property, &c., whether the same accrues to her before or during coverture, provided her will be executed in presence of two witnesses, neither of whom shall be her husband.' It also provides, sect. 9th, that in cases of intestacy the husband shall be entitled to letters of administration, and if she leave no child or children, nor the descendants of children living, the husband is entitled to her personal estate absolutely. Under the provisions of this act a married woman was permitted to dispose of her whole separate estate to the entire exclusion of her husband, and thus the law remained until 1855, May 4th, when the legislature passed an act which declares " that the power of any married woman to bequeath or devise her property by will shall be restricted, as regards the husband, to the same extent as the husband's power, so to dispose of his property, is restricted as regards the wife, namely : so that any surviving husband may, against her will, elect to take such share and interest in her real and personal estate, as she can, when surviving, elect to take against his will, in his estates, or otherwise, to take only her real estate as tenant by the curtesy.

" In order to enable a widow to take against or contrary to the will of her husband, it is necessary for her to make her election, and to enable her to do this the law gives her twelve months after his decease, and before the expiration of that period she cannot be called upon nor compelled to do so, and the better to enable her to do so she can compel the exhibition of a true inventory and fair account of the estate by the executor. After the expiration of twelve months from the death of the testator the Orphans' Court may, on application of any one interested in the estate, issue a citation to such widow to appear at a certain time, not less than one month thereafter, in said court, to make her election, and if

[Nissley v. Heisey.]

she neglect or refuse to appear upon such citation, upon due proof of service to the court, such neglect or refusal shall be deemed an acceptance of the bequest, &c.   And, as the widow and surviving husband are placed upon an equality in regard to the quantity of interest they are to have or may take in the estates of each other, it appears to us but fair that such should be held in the same time and mode of election, and that the husband should be allowed twelve months after the death of his wife within which to make up his mind, and that before doing so he should have a right to compel the exhibition of a true inventory and fair account of the estate by the executors, and if, at the expiration of that time, he fail to elect he should be cited to do so by some one interested in the estate, &c.   In the case before us, although Barbara Heisey died in 1862, on the 12th of September, her will was not proved until February 23d 1864, and the executors, for aught that appears in the case stated, have exhibited no inventory in the register's office, nor have they, nor any one interested in the estate, ever even requested, much less cited, the husband to elect whether or not he would take under the will or the law; but on the contrary he gave them written notice that he would not recognise the will, and that independent and outside of her will he·claimed all his rights in and to her estate to which he was by law entitled.   This notice was given soon after the death of the widow of Martin Nissley, at whose decease said money became payable, and before its payment to the executors, and before any inventory was filed by them.

" We are, therefore, of opinion:—

" 1. That this money did not belong absolutely to the husband of Barbara Heisey by virtue of his marital rights merely.

" 2. That at the time Barbara Heisey died it was her separate property, and would pass under her will, subject to the rights of her husband under Act of Assembly of 1855.

" 3. That the husband, under the facts set forth in the case stated, gave to the executors of the will of Barbara Heisey sufficient notice of his election to claim under the law and refuse the provisions set forth in her will, and gave this notice sufficiently early to enable him to do so, and that he has not in any way waived his right to make such election.

" 4. That under the law he is entitled to have and to take one-half of the personal estate of his deceased wife, after payment of debts, expenses, &c.

" And accordingly we render judgment in favor of the plaintiff and against the defendant for one-half the sum stated, to wit: for the sum of $673, with interest from April 1st 1872, and costs of suit."

Both parties appealed to the Supreme Court.

The executors of Heisey assigned for error that the court had not rendered judgment in their favor for the " one-sixth part of the

money charged during the life of Anna Nissley," with interest, &c.

The defendants assigned for error that the court did not give judgment for the defendants.

*A. Herr Smith*, for Nissleys.—There being no appeal from the decree of probate, the plaintiff is concluded: Logan *v.* Watt, 5 S. & R. 213; Holliday *v.* Ward, 7 Harris 489; Thompson *v.* Thompson, 9 Barr 234; Loy *v.* Kennedy, 1 W. & S. 396; Hegarty's Appeal, 25 P. F. Smith 512; Lovett *v.* Matthews, 12 Harris 332.   Mrs. Heisey's share was a chose in action, which her husband might have reduced to possession: Webb's Appeal, 9 Harris 248.   The husband delayed too long in electing to take against the will: Bradley *v.* Bradley, 4, Whart. 173; Burk *v.* Gleason, 10 Wright 297.

*D. G. Eshleman* and *N. Ellmaker*, for Eyer.—A widow's right in her husband's real estate, under the Act of 29th March 1832, is an interest in land: Kurtz's Appeal, 2 Casey 465; Zeigler's Appeal, 11 Id. 189; Schall's Appeal, 4 Wright 177; Gourley *v.* Kinley, 16 P. F. Smith 273.   When the heirs are claiming the widow's right after her death, it is not improperly called a lien upon land: Medlar *v.* Aulenbach, 2 Penna. R. 358; Hise *v.* Geiger, 7 W. & S. 275; Kline *v.* Bowman, 7 Harris 24.   So far as the chidren of Martin Nissley were concerned, this money charged during the lifetime of their mother was personal property, and Barbara Heisey's share was a chose in action, which her husband had the right to sell and assign at any time during her lifetime: Siter's Case, 4 Rawle 468; Shay *v.* Sissaman, 10 Barr 432.   The Act of April 11th 1849 does not affect this case, because the rights of the husband were vested before its passage; Boose's Appeal, 6 Harris 393; Peck *v.* Ward, Id. 509; Stehman *v.* Huber, 9 Id. 262; Bachman *v.* Chrisman, 11 Id. 163; Martha Mann's Appeal, 14 Wright 381.   The plaintiff's intestate having had a vested interest in said money before the passage of the Act of 1848, his wife could not dispose of it by will.   Being personal estate, she might have disposed of it with the assent of her husband, under the Act of 8th April 1833, Pamph. L. 248.   There being no such assent of the husband, the will of Barbara Heisey was void; and her husband having survived her, was entitled to administration of her estate: Act March 15th 1832, sect. 22, 1 Br. Purd. 410, pl. 27.   If a husband takes administration upon the estate of his wife he will be entitled, as administrator, to all her personal estate in action at her death: 1 Wms. Ex. 778, 779; Clay *v.* Irvine, 4 W. & S. 232; Stewart *v.* Stewart, 7 Johns. Ch. 229; Jones *v.* Warren, 4 Dana (Ky.) 334; The Fourth Ecclesiastical Society *v.* Mather, 15 Conn. 587, 588.   Any other than the husband taking

[Nissley *v.* Heisey.]

letters of administration, holds as trustee for the husband: Clark *v.* Clark 6 W. & S. 85; Whitaker *v.* Whitaker, 6 Johns. 112.

Judgment was entered in the Supreme Court, May 17th 1875, PER CURIAM.—The wife's property was realty until converted into personalty by the proceeding in partition. But the moment conversion took place the proceeds came under the Act of 29th March 1832, which forbade its payment to the husband without the written consent and separate examination and acknowledgment of the wife, which never existed. Consequently the money never vested in the husband. When the Act of 1849 took effect the money still remained to the wife as her own. Hence she had the power to dispose of it by will, subject only to the right given to the husband by the Act of May 4th 1855, to take his share against her will, which share was one-half on her decease without issue. We see no error to be corrected.

Judgment affirmed in both of the above cases.